IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| | ) | No. 22-20397 |
| TONY M. GANDY, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| RANDY DILL, | ) | ADVERSARY |
| | ) | PROCEEDING |
| Plaintiff, | ) | No. 23-02005 |
| | ) | |
| v. | ) | |
| | ) | |
| TONY M. GANDY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER DENYING
CROSS MOTIONS TO ENFORCE SETTLEMENT**

Pursuant to notice, (i) Plaintiff Randy Dill's ("Plaintiff") Motion to Enforce Settlement Agreement (A.P. ECF No. 36)[1] (the "Motion"); (ii) Defendant Tony M. Gandy's ("Defendant") Amended Response and Cross-Motion to Enforce Settlement Agreement (A.P. ECF No. 39) (the "Cross-Motion"); (iii) Plaintiff's Reply (A.P. ECF No. 45); and (iv) Defendant's Supplement to the Cross-Motion (A.P. ECF No. 46) came on for hearing on

---

[1] Docket citations beginning with "A.P." refer to the docket in the present adversary proceeding, No. 23-02005. All other citations to the docket refer to the docket in the underlying bankruptcy case, No. 22-20397.

AO 72A
(Rev. 8/82)

January 11, 2024. For the reasons stated below, both the Motion and the Cross-Motion will be denied.

## BACKGROUND FACTS

Defendant filed his chapter 13 bankruptcy petition on December 1, 2022. Thereafter, Plaintiff filed Claim No. 8 in the amount of $12,348.85 arising from a default judgment in state court. Claim No. 8 was secured by a judgment lien on all real and personal property of Defendant. Under the confirmed chapter 13 plan (the "Plan"), Defendant avoided the judgment lien of Plaintiff, rendering the debt unsecured under the Plan. (See ECF Nos. 2, 35, 49.) However, the Plan provides that general unsecured creditors shall be paid a 100% dividend.[2] (ECF No. 2 at 3.)

Plaintiff filed this adversary proceeding on February 28, 2023, alleging nondischargeability of the debt owed to him under 11 U.S.C. § 523(a)(2). The adversary case proceeded normally, and the parties engaged in settlement negotiations.

On August 22, 2023, Defendant's counsel sent an e-mail to Plaintiff's counsel, writing in relevant part: "As we discussed, [Defendant] has authorized me [to] propose a settlement in this matter by allowing a secured claim in the amount of $6,500.00 at 5%,

---

[2] The Court notes that a Motion to Convert Case to Chapter 7 was filed by the Chapter 13 Trustee on November 13, 2023, and remains pending. (ECF No. 52.) Among the grounds stated for conversion, the Trustee alleges that "[t]he case is not currently funded to pay unsecured creditors at 100%." (Id.) The hearing scheduled for the Court to consider the Motion to Convert Case to Chapter 7 has been continued until March 5, 2024.

which will be paid in the case." (A.P. ECF No. 36-2 at 5.) The same day, Plaintiff's counsel countered this offer by e-mail as follows: "[Plaintiff] said to counter at $11,000 on the terms you suggested." (Id. at 4.) Defendant's counsel responded two days later, writing: "[T]o avoid cost [Defendant] has authorize[d] me to increase the settlement proposal to $7,500." (Id. at 1.) On September 5, 2023, Plaintiff's counsel responded: "[Plaintiff] accepts the counter-offer at $7,500." (A.P. ECF No. 36-1 at 1.)

The parties did not exchange a draft settlement until December.[3] Plaintiff's counsel sent a draft settlement agreement to Defendant's counsel via e-mail on December 12, 2023. (A.P. ECF No. 39-1 at 1, 5-7.) The attached draft provided, "Defendant shall make such filings as are necessary to add a secured claim [in Defendant's bankruptcy case] in the amount of $7,500.00, accruing interest at five percent (5%), which will be paid as a secured debt in [the bankruptcy case]." (Id. at 5-6.) In the e-mail, Plaintiff's counsel wrote: "A consideration I have is that the agreement did not constitute a release of the remaining balance of the debt. Do you think we can reduce the unsecured claim by the amount of the secured claim within the bankruptcy?" (Id. at 5.) The draft did not mention whether or how Plaintiff's existing unsecured claim would be affected by the settlement—it is

---

[3] Plaintiff's counsel (via his paralegal) attempted to e-mail a draft settlement agreement to Defendant's counsel on October 18, 2023, and followed up on November 6, 2023. However, Defendant's counsel never received them because Plaintiff's counsel and his paralegal sent those e-mails to the wrong e-mail address. (ECF Nos. 45-3, 45-4.)

apparent from Plaintiff's counsel's e-mail that he was initiating discussion of this issue.

The next day, Defendant's counsel responded with a redline version of the draft.[4] (A.P. ECF No. 36-3 at 3.) Plaintiff's counsel promptly responded with "further redlines." (A.P. ECF No. 39-5 at 1, 9-12.) In that version, among other revisions not relevant here, Plaintiff's counsel added a paragraph as follows: "Plaintiff shall amend the claim filed by Plaintiff [in Defendant's bankruptcy case] to reflect a total unsecured claim in the amount of $3,944.00." (Id. at 10.)

It was during certain e-mail discussions on December 12 and 13, while revised drafts were being sent back and forth, that the two attorneys realized that they disagreed on the treatment of Plaintiff's unsecured claim, as shown in the following excerpts:

> **Plaintiff's counsel's e-mail ("PL")** sent December 12, 2023, 5:53 p.m.: A consideration I have is that the agreement did not constitute a release of the remaining balance of the debt. Do you think we can reduce the unsecured claim by the amount of the secured claim within the bankruptcy? . . .
> **Defendant's counsel's e-mail ("DEF")** sent December 13, 2023, 7:23 a.m.: It is my understanding of the agreement that 7500 is the full amount . . .
> **PL** sent December 13, 2023, 9:58 a.m.: Why would my client have agreed to that? . . .
> **DEF** sent December 13, 2023, 11:05 a.m.**:** That is why there is a settlement. My client gets something and your client gets something. Otherwise, you[r] client gets everything and I don't understand why my client would agree to that? . . .
> **PL** sent December 13, 2023, 11:10 a.m.: Your client gets a settlement of the adversary action. What you are trying to add is outside of what your client could obtain from a judgment in this action. Simply put, it is outside of the

---

[4] Defendant counsel's e-mail indicates that Defendant's counsel sent a redline version but no such version was attached to any exhibits submitted to the Court.

> scope of the dispute, so to assume it was included is clearly not within the meeting of the minds . . .
> **PL** sent December 13, 2023, 11:44 a.m.: I reviewed the express language of our agreement and it was never agreed that the unsecured debt would be converted. Nor was it agreed that there would be a release of any sort. Rather, the agreement was that your client would allow a secured claim in the amount of $7,500. I reached out in good faith to suggest that the unsecured debt should be reduced, because that seemed in keeping with our agreement . . .
> **DEF** sent December 13, 2023, 11:58 a.m.: That was not mine or my client[']s understanding. I assume that means we don't have a settlement and we need to gear up for a trial . . . .

(A.P. ECF No. 36-3 at 1-6.)

It was apparent from the e-mails exchanged that the parties disputed how Plaintiff's unsecured claim in the bankruptcy case would be affected by "allowing" a $7,500.00 secured claim. Plaintiff's counsel asserted the agreement meant the balance of the debt would continue to be treated as unsecured; Defendant's counsel asserted that the agreement meant the balance would be released. Each party has now alleged that two different forms of a settlement was reached and asked the Court to enforce the settlement in their preferred manner. As a result, and for the reasons discussed more fully below, the Motion and Cross-Motion will both be denied.

## CONCLUSIONS OF LAW

Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the [c]ourt that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to

create a jury issue on at least one essential element of the [movant's] case. Thus, we view the evidence in a light most favorable to the nonmoving party.

Duenas v. Cook, 347 Ga. App. 436, 436-37 (2018) (quoting Newton v. Ragland, 325 Ga. App. 371, 371 (2013)).

"The law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties." Johnson v. DeKalb Cnty., 314 Ga. App. 790, 793 (2012) (internal quotations and citations omitted); see also Hopson v. Hopson (In re Hopson), 216 B.R. 297, 297 (Bankr. N.D. Ga. 1997). "Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract." S. Med. Corp. v. Liberty Mut. Ins. Co., 216 Ga. App. 289, 291 (1995). "[I]t is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense." Id.

If the existence or terms of a settlement agreement are disputed, then the agreement

AO 72A
(Rev. 8/82)

must be in writing. O.C.G.A. § 15–19–5 (attorneys have authority to bind their clients by agreement made in writing); Brumbelow v. N. Propane Gas Co., 251 Ga. 674, 676 (1983); Johnson, 314 Ga. App. at 793; Imerys Clays, Inc. v. Wash. Cnty. Bd. of Tax Assessors, 287 Ga. App. 674, 675-76 (2007). In the absence of a formal writing signed by the parties, "letters or documents prepared by attorneys which memorialize the terms of the agreement will suffice." In re King, 604 B.R. 93, 99 (Bankr. N.D. Ga. 2019) (citing Hopson, 216 B.R. at 301). Such correspondence must contain all material terms of the agreement, as a settlement does not exist until all of the essential terms have been agreed. Moore v. Farmer's Bank of Union Point, 184 Ga. App. 86, 87 (1987) (letters from counsel conflicted as to material terms).

A valid and binding contract does not exist unless there is a meeting of the minds on all essential terms. "[I]f there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement ... it must follow that a valid and binding contract was not made." BellSouth Advert., etc., Corp. v. McCollum, 209 Ga. App. 441, 445, 433 S.E.2d 437 (1993); Moss v. Moss, 265 Ga. 802, 803 (1995). An essential term has been construed as one on which the contract "hinges." Cohen v. DeKalb Cnty. School Dist., No. 1:09–cv–1153–WSD, 2009 WL 4261161, at *6 (N.D. Ga. Nov. 25, 2009). "Any particular contract provision, essential or material to the parties, can be an essential term of the contract." Id.; see also Smith Svc. Oil Co. v. Parker, 250 Ga. App.

7

270 (2001) (because the quantity of gasoline to be supplied remained to be decided in a supply contract, parties had not agreed to all essential terms of the contract). Compare Kreimer v. Kreimer, 274 Ga. 359, 363 (2001) (settlement agreement was not an unenforceable "agreement to agree," even though shares of stock to be transferred were not specifically identified, as this was a nonessential term).

Further, to be enforceable, the terms of a contract "cannot be incomplete, vague, uncertain or indefinite." Triple Eagle Assocs., Inc. v. PBK, Inc., 307 Ga. App. 17, 20 (2010); Buchanan v. Buchanan, 348 Ga. App. 15, 20 (2018) (refusing to enforce purported settlement on incomplete terms); Rasheed v. Sarwhat, 300 Ga. 639, 640 (2017) (same); Moss, 265 Ga. at 803 (same). A contract need not include "definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves." Toncee, Inc. v. Thomas, 219 Ga. App. 539, 542 (1995).

### I. **Plaintiff's Motion to Enforce Settlement Agreement**

The Court will consider Plaintiff's Motion first. As the movant, in order to succeed, Plaintiff must show that there is no evidence in the record sufficient to create a jury issue on whether a settlement—with the terms Plaintiff contends were agreed to—was reached. Francis v. Chavis, 345 Ga. App. 641, 642 (2018). He has not done so.

Plaintiff urges the Court to find that the parties reached a settlement of his nondischargeability complaint and contends the evidence "reflect[s] the unambiguous agreement of the parties to settle Plaintiff's claim in exchange for the entry of a secured claim in the amount of $7,500.00 and no more nor less." (A.P. ECF No. 36 at 4.) Implicit in this argument is that Plaintiff's unsecured claim would be unaffected by the settlement.

Defendant responds that his offer to settle included only a secured claim, and no unsecured claim at all. (A.P. ECF No. 39 at 3-4.) Although Defendant is not quite clear on this point, Plaintiff's unsecured claim would presumably be replaced by the secured claim in the amount of $7,500.00.

Plaintiff's characterization of the purported agreement is not quite accurate. When Defendant's counsel initially sent an offer to "allow" a $7,500 secured claim at 5% interest to Plaintiff's counsel, the offer was silent as to the treatment of the unsecured claim and the parties clearly did not come to a meetings of the minds as to what "allowing" a $7,500.00 secured claim meant. Plaintiff's argument that the agreement was for "no more nor less" than a secured claim in the amount of $7,500.00 is not consistent with Plaintiff's counsel's communications with Defendant's counsel. It is evident from the parties' correspondence that they each believed the $7,500.00 secured claim would have differing effects on the unsecured claim: Plaintiff thought he would reduce the unsecured claim by $7,500, and Defendant believed the unsecured claim would be released. Based on these

9

discussions and differing interpretations, the treatment of the unsecured claim is an essential term, and the parties never reached an agreement on it. In other words, the purported settlement was incomplete.

The situation here is similar to that in Berk v. Equifax, Inc., No. 1:20-CV-1279-TWT-CCB, 2020 WL 10051521, at *6 (N.D. Ga. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL 2391465 (N.D. Ga. Mar. 18, 2021). In Berk, the parties engaged in settlement discussions, with the plaintiffs sending a settlement offer to the defendant's counsel via e-mail. The terms of the settlement offer were set forth in a numbered list and included, among other things, a payment to plaintiffs by defendant of $15,000 and certain disclosures by defendant to plaintiffs. After asking some clarifying questions and obtaining answers from plaintiffs, defendant's counsel accepted the settlement offer. Defendant counsel's then sent plaintiff a draft settlement, but it included *additional essential terms*. Plaintiffs sent back the draft with edits, *adding further essential terms,* but not removing the essential terms defendant's counsel had added. Plaintiffs' new terms were (1) a disclosure provision requiring certain disclosures by defendant and (2) an indemnification provision. Negotiations broke down over plaintiffs' additions, and defendant moved the court to enforce the settlement without the additional terms added by plaintiffs.

In denying enforcement of the settlement, the Berk court observed that "[t]he ultimate question is whether the parties in this case ever reached a final agreement

regarding the essential terms of a settlement." Id. at *5. Although it did appear that the parties had initially reached an agreement as to the settlement amount, "a review of the settlement agreement drafts exchanged by the parties makes apparent that there was no meeting of the minds on [at least one] of the terms material to the parties' agreement." Id. (quoting Graco Children's Prods. Inc. v. Kids II, Inc., No. 1:12-cv-3246-SCJ, 2013 WL 12062269, at *3 (N.D. Ga. June 3, 2013)). The court concluded the defendant had failed to demonstrate that there was a meeting of the minds between the parties as to all essential terms of the settlement agreement. Id. at *7.

The result is the same here. The Court is unable to enforce a purported settlement that it is unable to clearly and fully articulate. WBH by and through Harrington v. Bd. of Trustees of Ga. Military College, No. 5:20-cv-00042-TES, 2020 WL 2842675, at *3 (M.D. Ga. June 1, 2020) ("If the Court is going to enforce a settlement, it must be able to clearly articulate the complete terms [o]f that settlement[.]"); Anderson v. Benton, 295 Ga. App. 851, 854 (2009) ("In considering the enforceability of an alleged settlement agreement ... [a court] is obviously limited to those terms upon which the parties themselves have mutually agreed."). Treatment of Defendant's unsecured claim is an essential term on which the settlement hinges, and the evidence shows the parties never reached a consensus on this term for the Court to enforce. It is clear from the parties' correspondence on December 12 and 13 that they never agreed "at the same time, upon the same subject

11

matter, and in the same sense" on the unsecured claim's treatment in order to accomplish a meeting of the minds. S. Med. Corp., 216 Ga. App. at 291. While it does appear that the parties intended to *somehow* modify Plaintiff's unsecured claim in the bankruptcy case, they never agreed on the full manner and extent in which to do so. Rasheed, 300 Ga. at 640 (finding enforcement of settlement agreement by trial court was error when supposed settlement was incomplete and terms did not address all required aspects of divorce). Therefore, because there was not a meeting of the minds on all essential terms, no settlement agreement was reached, and the Motion shall be denied.

## II.   Defendant's Cross-Motion to Enforce Settlement Agreement

For the same reasons Plaintiff's Motion fails, Defendant's Cross-Motion must be denied. Defendant, like Plaintiff, contends the Court should find that the parties reached a settlement of his nondischargeability complaint "for a secured claim to be entered in the amount of $7,500.00." (A.P. ECF No. 39 at 5.)

Like Plaintiff's argument, this is rather disingenuous. Defendant does not *only* want a secured claim to be entered in the amount of $7,500; he wants that, *and* a release of the remaining portion of the unsecured claim that he contends was part of the settlement offer. The correspondence between the parties shows that by "allowing" a $7,500.00 secured claim they intended to alter Plaintiff's unsecured claim, not leave it untouched; however, they simply never agreed about how the remaining amount of the claim would be altered,

12

AO 72A
(Rev. 8/82)

i.e., reduction or release. It was not discussed in the initial offer and once it was belatedly raised, no agreement was reached. Absent agreement on all essential terms, no enforceable settlement exists. Defendant, like Plaintiff, has failed to show that there is no evidence in the record sufficient to create a jury issue on whether a settlement—with the terms Defendant urges—was reached.

## CONCLUSION

While it is clear the parties reached an important agreement as to $7,500.00 of Plaintiff's claim, no consensus was reached as to the remaining $4,848.85 of Plaintiff's claim, a material and essential term in the context of these settlement negotiations. Accordingly, for the reasons discussed above,

## **ORDER**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Enforce Settlement Agreement (ECF No. 36) is **DENIED**; and

**FURTHER ORDERED** that Defendant's Cross-Motion to Enforce Settlement Agreement (ECF No. 39) is **DENIED**.

*[signature]*

Michele J. Kim
United States Bankruptcy Judge
Southern District of Georgia

Dated at Brunswick, Georgia,
this 20th day of February, 2024.